(No. 98075.—

FORD MOTOR CREDIT COMPANY, Appellant, v. THOMAS B. SPERRY, d/b/a Thomas B. Sperry, Inc., Appellee.

*Opinion filed March 24, 2005.*

Mary K. Schulz, of Chicago, for appellant.

Dewey G. Hollingsworth, of Truemper, Hollingsworth

& Titiner, of Aurora (Larry Wechter, of Geneva, of counsel), for appellee.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

The circuit court of Kane County entered an order declaring void a previous order of that court awarding attorney fees to plaintiff, Ford Motor Credit Company (Ford Credit). The circuit court held that because the law firm representing Ford Credit had failed to register with this court, pursuant to our Rule 721(c) (166 Ill. 2d R. 721(c)), the firm's practice of law was unauthorized, and, accordingly, there was no valid basis upon which the court could award legal fees. A majority of the appellate court affirmed the judgment of the circuit court. 344 Ill. App. 3d 1068. For the reasons that follow, we reverse the judgment of the appellate court and vacate the order of the circuit court.

## BACKGROUND

In June 1993, defendant, Thomas B. Sperry, leased an automobile from Sycamore Auto Center, Inc. (Sycamore). Thereafter, Sycamore assigned the lease to Ford Credit. In December 1994, Ford Credit filed suit against defendant, alleging that defendant had breached the terms of the motor vehicle lease. As a remedy for defendant's breach, Ford Credit sought the return of the vehicle and monetary damages.

In response to the lawsuit lodged against him by Ford Credit, defendant filed a counterclaim against Ford Credit and a third-party action against Sycamore. Defendant alleged that Ford Credit and Sycamore had engaged in various fraudulent activities with respect to the vehicle lease. Only defendant's counterclaim against Ford Credit is at issue in this appeal. In August 1999, Ford Credit's lawsuit against defendant, as well as defendant's counterclaim against Ford Credit, went to

trial. Following defendant's presentation of his case, Ford Credit moved for a directed verdict on several counts of defendant's counterclaim, including count V. In count V, defendant alleged that Ford Credit had violated provisions of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2000)). After hearing the evidence, the circuit court granted Ford Credit a directed verdict against defendant on this consumer fraud count.

Thereafter, on November 15, 1999, Ford Credit petitioned the circuit court for statutory attorney fees available to it as the prevailing party in the consumer fraud action (see 815 ILCS 505/10a(c) (West 2000)). The evidence adduced with respect to this claim showed that, during the entire course of these proceedings, Ford Credit was represented by attorney Mary K. Schulz. At the time Ford Credit's complaint was filed, Schulz practiced with the professional service corporation law firm of Vigil, Berkley, Schulz and Gordon, P.C. After that firm dissolved, Schulz continued to represent Ford Credit in these proceedings as the principal in her own newly created professional service corporation law firm, Schulz & Associates, P.C.

On May 8, 2000, the circuit court awarded Ford Credit—as the prevailing party in the consumer fraud action—statutory attorney fees in the amount of $31,717.25. Defendant neither filed a motion with the circuit court to reconsider this award, nor filed an appeal of this judgment with the appellate court. In May 2001—one year after the judgment for attorney fees was entered—Ford Credit commenced collection proceedings against defendant on the attorney fees award.

On February 5, 2002—21 months after the circuit court entered the original judgment against defendant for attorney fees—defendant, *pro se,* filed in the circuit court a pleading entitled "First Amended Motion to

Vacate the Void Orders of This Court." In this pleading, brought pursuant to section 2—1401(f) of the Code of Civil Procedure (735 ILCS 5/2—1401(f) (West 2000)), defendant requested that the circuit court vacate the May 8, 2000, order awarding statutory attorney fees to Ford Credit. Defendant asserted that when the professional service corporation of Vigil, Berkley, Schulz and Gordon, P.C., initiated the lawsuit against him in 1994, that firm lacked a certificate of registration with this court, as required pursuant to our Rule 721(c) (166 Ill. 2d R. 721(c)). Defendant also alleged that when that same law firm petitioned the circuit court for attorney fees in 1999, it remained unregistered under Rule 721(c). Based upon the firm's lack of registration with this court, defendant asserted that Ford Credit was "not represented by any entities authorized by the Illinois Supreme Court to practice law in the State of Illinois," and that the law firm was thereby "prohibited from opening or maintaining an office for that purpose." Accordingly, defendant argued, the filing of the lawsuit against him "did not confer jurisdiction" upon the circuit court. Thus, defendant concluded, because the law firm was "prohibited *** from practicing law in the State of Illinois" as a result of its failure to register pursuant to Rule 721(c), the attorney fees award was null and void *ab initio*.

A hearing on defendant's motion was held on March 7, 2002. At that time, defendant had retained counsel and was no longer appearing *pro se*. Counsel for defendant argued that pursuant to the Corporation Practice of Law Prohibition Act (705 ILCS 220/0.01 *et seq.* (West 2000)), a corporation is prohibited from practicing law, unless that entity falls within the ambit of the Professional Service Corporation Act (805 ILCS 10/1 *et seq.* (West 2000)). In turn, counsel argued, the Professional Service Corporation Act specifies that it is this court which shall determine how professional corporations

shall be organized to practice law, and it is through the provisions of Rule 721 that this court allows professional corporations to practice law.

Counsel further argued that because the professional service corporation law firms representing Ford Credit were not registered with this court pursuant to Rule 721(c), those firms were engaged in the unauthorized practice of law. Accordingly, counsel stated, the order granting those law firms attorney fees was therefore void. In addition, counsel further asserted that because the motion to vacate the judgment granting Ford Credit attorney fees was brought pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401(f) (West 2000)), the motion was not untimely, as section 2—1401 provides that a void order can be set aside at any time.

At the hearing on defendant's motion, Ford Credit was again represented by attorney Mary K. Schulz. In response to defendant's arguments, Ford Credit's counsel first noted that there was no dispute that, during these proceedings, she was a duly licensed attorney in good standing with this court. Counsel then stressed that the licensing requirements imposed by this court upon attorneys is distinguishable from the registration requirements for professional service corporation law firms contained within Rule 721(c). Counsel argued that Rule 721 is an administrative rule which allows this court to identify the individuals who are involved in a professional service corporation and to assure that these persons are licensed to practice law in this state. The administrative provisions of Rule 721, counsel asserted, are in contrast to the licensing and regulation provisions in our rules. Counsel emphasized that licenses to practice law are not given to law firms; rather, they are awarded to individuals. Further, counsel stated, the law firms for which licensed attorneys practice are not, themselves, licensed to practice law.

During the course of the hearing, counsel also advised the court that the firm with which she practiced at the time Ford Credit's complaint was filed, Vigil, Berkley, Schulz and Gordon, P.C., had since dissolved in May 2000, and she believed that firm had not been registered with this court pursuant to Rule 721. Counsel further stated that she then set up her own professional service corporation law firm, Schulz & Associates, P.C., which was, at the time of the hearing, in the process of Rule 721 registration with this court. Counsel concluded her argument by reiterating her position that registration under Rule 721 is purely administrative and is not analogous to the grant of a license to practice law.

On April 9, 2002, the circuit court granted defendant's motion to vacate the judgment order of May 8, 2000, which had awarded Ford Credit statutory attorney fees. As an initial matter, the court found that it was uncontroverted that Ford Credit's attorney throughout these proceedings, Mary K. Schulz, was duly licensed to practice law in this state. In addition, the circuit court acknowledged that, at the time of its ruling, the law firm of Schulz & Associates, P.C., had registered with this court pursuant to Rule 721(c).

However, the circuit court also found that it was uncontroverted that the law firms with which Schulz practiced during this litigation had not registered under Rule 721(c). The circuit court held that the "most pertinent" case was *Kaplan v. Tabb Associates, Inc.*, 276 Ill. App. 3d 320 (1995), because it presented "striking similarities" to the cause before it. The circuit court explained that in *Kaplan*, the plaintiff and the defendant architectural firm signed a contract for architectural services. When a monetary dispute arose between the plaintiff and the defendant firm, that firm sought to invoke the contract's arbitration provision. The plaintiff sought to have the contract declared void due to the

failure of the defendant firm to be licensed under the Illinois Architecture Practice Act of 1989 (225 ILCS 305/21 (West 1992)). The circuit court in the instant cause emphasized that the *Kaplan* court held that, even though the sole owner of the defendant firm was a duly licensed architect, the contract was nevertheless void due to the failure of the defendant firm to become licensed under the Architecture Practice Act.

The circuit court acknowledged that there were factual differences between the *Kaplan* case and the matter before it. Nevertheless, the circuit court followed *Kaplan* and held that, in the instant cause, the law firms representing Ford Credit were in violation of the registration requirement of Rule 721(c) at the time of trial and also when the attorney fees award was made in May 2000. The circuit court reasoned:

> "The *Kaplan* case is essentially controlling here ***. The mere fact that the attorneys here were licensed is immaterial to the court's determination. *** Since the corporations were not registered *** they cannot now claim the benefit of statutory fees when the lack of registration of these corporations precluded them from holding themselves out as organizations for the practice of law in the state of Illinois."

As a result, the circuit court held that the order for award of attorney fees was void *ab initio*, and the court therefore vacated that order.

Ford Credit appealed. A majority of the appellate court affirmed. 344 Ill. App. 3d 1068. The appellate majority equated a law firm's failure to register pursuant to Rule 721(c) with the unauthorized practice of law. In support of this determination, the appellate majority principally relied on *Remole Soil Service, Inc. v. Benson*, 68 Ill. App. 2d 234 (1966), which held that legal proceedings prosecuted by those without authority are null, and that the judgments resulting from such proceedings are void. Thus, the appellate majority concluded that because

the law firms representing Ford Credit during the instant litigation performed legal services without authorization and in violation of the law, the circuit court correctly determined that the order awarding Ford Credit statutory attorney fees was void *ab initio*.

Justice Kapala dissented. First, the dissenting justice asserted that the circuit court erred in allowing defendant's motion to vacate the judgment granting Ford Credit attorney fees because that motion was an improper collateral attack on a final order. Second, Justice Kapala believed that even if defendant had properly appealed the award of attorney fees within the applicable time to appeal that order, the appellate court's prior decision in *Joseph P. Storto, P.C. v. Becker*, 341 Ill. App. 3d 337 (2003), controlled and defeated defendant's claim. Justice Kapala explained that in *Storto*, the court held that Rule 721(c) was not enacted for the protection of public safety and, therefore, contractual obligations owed to a law firm not properly registered under Rule 721(c) could not be voided absent a showing of prejudice resulting from a failure to register. Thus, based upon the holding in *Storto*, the dissenting justice concluded that the circuit court erred in voiding the judgment order awarding statutory attorney fees to Ford Credit.

We granted Ford Credit leave to appeal to this court. 177 Ill. 2d R. 315(a).

ANALYSIS

In the instant cause, the circuit court, pursuant to section 2—1401(f) of the Code of Civil Procedure (735 ILCS 5/2—1401(f) (West 2000)), vacated a prior judgment order entered on May 8, 2000, reasoning that the May 8 order awarding statutory attorney fees to Ford Credit was void *ab initio* because the law firms representing Ford Credit lacked Rule 721(c) registration with this court. At issue in this appeal is whether a law firm's failure to register as a professional service corporation

with this court, pursuant to the requirement set forth in our Rule 721(c), renders the legal services provided by that law firm the unauthorized practice of law, nullifies the proceedings in which the firm participated, and causes the resulting judgments of such proceedings to be void. Our review of this issue is *de novo*. *People v. Johnson*, 206 Ill. 2d 348, 359 (2002).

Petitions for relief from judgments filed pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 2000)) "invoke[ ] the equitable powers of the circuit court, which should prevent enforcement of a *** judgment when it would be unfair, unjust, or unconscionable." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 225 (1986). At issue in the instant cause is subsection (f) of section 2—1401, which provides: "Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief." 735 ILCS 5/2—1401(f) (West 2000). Section 2—1401(f) codifies a common law rule allowing litigants to attack a void judgment at any time. See *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104-05 (2002). In a petition to vacate a void judgment brought pursuant to subsection (f) of section 2—1401, the general rules pertaining to petitions filed under section 2—1401—that they must be brought within two years of the order of judgment, that the petitioner must allege a meritorious defense to the original action, and that the petitioner must show that the petition was brought with due diligence—do not apply. *Sarkissian*, 201 Ill. 2d at 104. Rather, "[t]he allegation that the judgment or order is void substitutes for and negates the need to allege a meritorious defense and due diligence." *Sarkissian*, 201 Ill. 2d at 104.

A void order or judgment is, generally, one entered by a court without jurisdiction of the subject matter or the parties, or by a court that lacks the inherent power to

make or enter the order involved. *In re Estate of Steinfeld*, 158 Ill. 2d 1, 12 (1994); *People v. Wade*, 116 Ill. 2d 1, 5 (1987). A void judgment is from its inception a complete nullity and without legal effect. *In re Application of the Cook County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1985*, 228 Ill. App. 3d 719, 731 (1991); *In re Marriage of Allcock*, 107 Ill. App. 3d 150, 153 (1982). We have cautioned, however, that in declaring a prior order to be void, the court must be mindful that it is setting aside a final judgment based upon a collateral attack. Accordingly, we have recently held that " '[b]ecause of the disastrous consequences which follow when orders and judgments are allowed to be collaterally attacked, orders should be characterized as void only when no other alternative is possible.' " *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 341 (2002), quoting *In re Marriage of Vernon*, 253 Ill. App. 3d 783, 788 (1993).

In its submission to this court, Ford Credit contends that the lower courts erred in holding that the judgment order awarding Ford Credit statutory attorney fees was void *ab initio*. According to Ford Credit, the appellate court majority improperly equated a law firm's failure to register with this court pursuant to Rule 721(c) with the unauthorized practice of law. Ford Credit notes that the sole claim raised by defendant in the circuit court to support his argument that the attorney fees award is void and should be vacated is that the law firms hired by Ford Credit did not register with this court under Rule 721. The circuit court held, and the appellate majority agreed, that this defect alone was sufficient to void the previously entered judgment order.

Ford Credit argues that there are several points upon which the appellate court should be reversed. First, Ford Credit notes that in arriving at its ruling, the appellate

majority improperly relied upon *Remole Soil Service, Inc. v. Benson*, 68 Ill. App. 2d 234 (1966), a case which Ford Credit asserts is factually inapposite to the matter at bar. Ford Credit additionally contends that, by relying upon *Remole*, the appellate majority failed to follow its own factually relevant precedent. Ford Credit notes that only a few months prior to filing its ruling in the instant cause, the appellate court decided *Joseph P. Storto, P.C. v. Becker*, 341 Ill. App. 3d 337 (2003), wherein the court ruled that a law firm's failure to register pursuant to our Rule 721(c) did not result in the voiding of a contract for attorney fees.

Second, Ford Credit observes that the appellate majority failed to consider that the judgment award for statutory attorney fees was in its own favor as the prevailing party in the consumer fraud action, and was not awarded to its law firms. Third, Ford Credit notes that, at all times during this litigation, it was represented by attorneys who were duly licensed to practice law in this state. As such, Ford Credit contends, there was no unauthorized practice of law by any lawyer involved in this case. In addition, Ford Credit asserts that the lower courts failed to consider the fact that the law firm of Schulz & Associates, P.C., was properly registered with this court on April 9, 2002, the date on which the circuit court entered its decision to void the attorney fees judgment order. Finally, Ford Credit contends that the judgment order awarding statutory attorney fees was not "void," because there was no claim that the circuit court lacked jurisdiction over either the subject matter or the parties. As such, Ford Credit concludes, defendant's motion to vacate the judgment order awarding attorney fees was an improper collateral attack.

In response, defendant asserts that the circuit court properly granted his motion to vacate the judgment order awarding Ford Credit statutory attorney fees, and that

the action of the circuit court was properly affirmed by the appellate majority. In his submission to this court, defendant contends that by failing to advise the circuit court that their law firms lacked registration with this court pursuant to Rule 721(c), "Ford's attorneys had committed a fraud on the court." Defendant contends that all work performed on behalf of Ford Credit and itemized in the fee petition occurred while the law firms lacked the required registration, and that "Illinois statutes and Rule 721 prohibit the collection of legal fees by a corporation that has failed to obtain a certificate of registration." As a result, defendant contends, the judgment order awarding attorney fees to Ford Credit is void as against public policy.

In his brief to this court, defendant further urges this court to hold that the "fee award to Ford was void because it exceeded the trial court's inherent power and authority by infringing on the exclusive authority of the Illinois Supreme Court to regulate the practice of law in Illinois by professional service corporation law firms." Defendant concludes by arguing that because Ford Credit had no right to recover attorney fees paid to professional service corporations which "were not authorized to practice," the circuit court "did not acquire subject matter jurisdiction to adjudicate such a claim for fees nor to enter judgment thereon in favor of Ford." We reject each of defendant's arguments.

This court has the inherent power to define and regulate the practice of law in this state. *In re Anastaplo*, 3 Ill. 2d 471, 475 (1954); *People ex rel. Chicago Bar Ass'n v. Goodman*, 366 Ill. 346, 349-50 (1937). More specifically, "the power to prescribe rules governing attorney conduct, and to discipline attorneys for violating those rules, rests solely in this court." *People ex rel. Brazen v. Finley*, 119 Ill. 2d 485, 494 (1988).

To this end, our court has promulgated rules which

set forth detailed regulations for the study of law and which govern the admission of applicants to our state bar. See 134 Ill. 2d Rs. 701 through 720. This court has also created a comprehensive scheme to regulate attorneys and discipline them for misconduct. As part of this regulatory scheme, we have promulgated rules of professional conduct for state-licensed attorneys (see 134 Ill. 2d Rs. 1.1 through 8.5), and have constituted an Attorney Registration and Disciplinary Commission (ARDC) (134 Ill. 2d R. 751), and created the office of an Administrator (134 Ill. 2d R. 752) to supervise "[t]he registration of, and disciplinary proceedings affecting, members of the Illinois bar." 134 Ill. 2d R. 751(a). In addition, this court has promulgated detailed rules which prescribe the appropriate discipline when the Rules of Professional Conduct are violated. See 134 Ill. 2d Rs. 751 through 775; 137 Ill. 2d Rs. 776, 777; 188 Ill. 2d R. 778; 155 Ill. 2d R. 780. This court has also created a procedural framework within which the ARDC performs its duties to investigate complaints of misconduct against licensed attorneys, hold hearings on those complaints, and provide review of the findings with respect to those complaints. 166 Ill. 2d R. 753.

The above-described regulatory rules which govern the admission of lawyers to our state bar, regulate the practice of law and the conduct of lawyers, and prescribe discipline for lawyer misconduct are intended to safeguard the public and assure the integrity of our legal system. These regulatory provisions assure that only those individuals who are fit and qualified to practice law will be licensed in this state, that those individuals will practice law ethically and with competence, and that any infractions of the Rules of Professional Conduct will be investigated and discipline will be imposed if appropriate.

In contrast to the regulatory rules discussed above,

the provisions contained in our Rule 721 do not have as their primary purpose the protection of the public safety. Rather, Rule 721 is designed to permit duly licensed lawyers the business option of organizing in professional service corporations as a means of providing them with limited liability protection.

Under the Corporation Practice of Law Prohibition Act (705 ILCS 220/0.01 *et seq.* (West 2000)), a corporation is prevented from practicing law. However, with the passage of the Professional Service Corporation Act (805 ILCS 10/1 *et seq.* (West 2000)), licensed professionals were afforded the choice of organizing their practices in a corporate form. By enacting the Professional Service Corporation Act, the legislature intended to

"provide for the incorporation of an individual or group of individuals to render the same professional service or related professional services to the public for which such individuals are required by law to be licensed *** while preserving the established professional aspects of the personal relationship between the professional person and those he serves professionally." 805 ILCS 10/2 (West 2000).

Section 7 of the Professional Service Corporation Act requires that the corporations organized and incorporated under this Act must render professional services only through "its officers, employees and agents who are duly licensed *** to render such professional services within this State." 805 ILCS 10/7 (West 2000). Section 16 of the Professional Service Corporation Act specifically applies to attorneys at law and provides:

"[T]he provisions of this Act shall be applicable to attorneys at law only to the extent and under such terms and conditions as the Supreme Court of Illinois shall determine to be necessary and appropriate." 805 ILCS 10/16 (West 2000).

It is through Rule 721 that this court allows duly licensed lawyers the option to organize their law firms under one of several statutory vehicles providing limited liability, including professional service corporations.

Paragraph (a) of Rule 721 requires that each corporate shareholder and any employee engaged in the practice of law must be licensed to practice law, and that the entity "shall do nothing which, if done by an individual attorney, would violate the standards of professional conduct applicable to attorneys licensed by this court." 166 Ill. 2d R. 721(a)(3).[1] Paragraph (b) of this rule requires that the corporation, and the attorneys practicing through this entity, must abide by the standards of professional conduct applicable to attorneys licensed by this court. 166 Ill. 2d R. 721(b). Paragraph (c) requires each corporation or association that seeks to practice law to register with this court. See 166 Ill. 2d R. 721(c). Specifically, Rule 721(c) provides:

"(c) No corporation or association or limited liability company shall engage in the practice of law in Illinois, or open or maintain an establishment for that purpose in Illinois, without a certificate of registration issued by this court."

The initial registration application requires a fee of $50 (166 Ill. 2d R. 721(e)), and annual renewals must be accompanied by a $40 fee (166 Ill. 2d R. 721(f)). Finally, any violation of this rule by the entity "is a ground for the court to terminate or suspend the right of the [entity] to practice law or otherwise to discipline it." 166 Ill. 2d R. 721(b).

In the matter before us, defendant's *sole* claim in the circuit court to support his argument that the judgment order awarding attorney fees to Ford Credit is void and must be vacated is that the law firms representing Ford Credit throughout the litigation were not *registered* with this court pursuant to Rule 721(c). The circuit court held, and the appellate majority agreed, that this defect *alone*

---

[1]This court has recently amended Rule 721, effective July 1, 2003. However, these amendments occurred subsequent to the events in the instant cause and are not germane to the issue presented.

rendered the previously entered judgment order void, as the law firm's failure to register under Rule 721(c) equated with the unauthorized practice of law. We reject this analysis. We hold that a correct interpretation of the scope and purpose of our Rule 721(c) was set forth in *Joseph P. Storto, P.C. v. Becker*, 341 Ill. App. 3d 337 (2003), a decision which the appellate court below acknowledged but refused to follow.

The *Storto* case also involved the question of a law firm's failure to register with this court pursuant to Rule 721(c). That case arose from an attorney fees dispute between the plaintiff law firm and its former client. After the parties ended their attorney-client relationship, the firm filed suit against the client seeking unpaid fees. The defendant client moved for summary judgment, arguing that because the firm was not properly registered with this court pursuant to Rule 721(c), the contract for legal fees was void as a matter of public policy, and she was entitled to judgment as a matter of law. The trial court granted the motion, holding that because the law firm was not properly registered under Rule 721(c), it was without authority to provide legal services and the contract it had entered into with the client was invalid. On appeal, the appellate court reversed.

The *Storto* court observed that although Rule 721(c) requires that professional service corporations register with this court, the rule also lacks civil or criminal penalties for noncompliance. "[C]riminal or civil penalties would indicate that the licensing requirements were enacted because they have a significant impact on public health or safety." *Storto*, 341 Ill. App. 3d at 344. Because Rule 721(c) fails to include civil or criminal liability for the failure to register, the *Storto* court held that this indicated that the registration requirement was not promulgated for the protection of the public safety. *Storto*, 341 Ill. App. 3d at 344. In addition, the *Storto* court

reasoned that this conclusion was supported by the fact that a law firm "generally does not incorporate to benefit its clients or to advance the public welfare. [Citation.] Rather, a law firm incorporates to enjoy certain tax benefits and to reduce its potential civil liability." *Storto*, 341 Ill. App. 3d at 344.

Accordingly, the *Storto* court determined that, because Rule 721(c) was not enacted for the protection of the public, the contractual obligations owed to a professional service corporation law firm which lacked registration under Rule 721(c) could not be voided absent a showing of prejudice resulting from the failure to register. *Storto*, 341 Ill. App. 3d at 342-44. Under the circumstances presented in that case, the court concluded that allowing the client to escape her contractual obligations would be disproportionate to the wrong committed by the law firm. *Storto*, 341 Ill. App. 3d at 343.

We adopt the analysis of Rule 721 set forth by the court in the *Storto* decision. We hold that a violation of the registration requirement contained in Rule 721(c) does not lead to the conclusion that the lawyers of the unregistered firm lacked either the authority or the competence to practice law. We emphasize that there is a fundamental difference between an unlicensed individual representing a party in legal proceedings or performing activities traditionally considered to be the "practice of law" and duly licensed attorneys who happen to belong to a law firm that has not filed its registration and paid its fees pursuant to Rule 721(c). The material inquiry in assessing whether there has been an unauthorized practice of law is whether the individual who acts on behalf of a client is duly licensed by this court, as it is only individuals—and not corporations—who are granted the privilege to practice law.

When unlicensed individuals engage in the practice of law, the public is at risk of harm. In contrast, when a

law firm fails to comply with the registration requirement in our Rule 721(c), it is the noncomplying firm that is harmed, not the public. By failing to register, the law firm loses its right to invoke the corporate protections of limited liability that are set forth in Rule 721. This reality further underscores that the registration requirement in Rule 721(c) was not enacted to safeguard the public welfare, but to benefit those law firms seeking the tax and limited liability advantages of incorporation. Therefore, duly licensed attorneys who belong to a firm that lacks Rule 721(c) registration do not, by virtue of the unregistered nature of the firm, engage in the unauthorized practice of law. *Cf. People v. Brigham*, 151 Ill. 2d 58 (1992) (defendant was not automatically deprived of his sixth amendment right to counsel because his attorney had failed to pay his annual registration dues with this court; counsel's oversight of nonpayment did not diminish his competency as an attorney).

Accordingly, the appellate court erred in applying the nullity rule set forth in *Remole Soil Service, Inc. v. Benson*, 68 Ill. App. 2d 234 (1966), to a violation of the registration requirement of Rule 721(c). In affirming the circuit court's holding that the judgment order awarding Ford Credit attorney fees was null and void, the appellate court principally relied on *Remole*. We hold that *Remole* is factually inapposite to the cause before us.

In *Remole*, an Illinois corporation initiated a lawsuit in small claims court against the defendant. The suit was filed and tried to judgment by the corporation's office manager, who was an unlicensed attorney. Thereafter, the defendant filed a motion with the court to find the corporation and its office manager in contempt for practicing law without a license. The circuit court denied the motion. On appeal, the appellate court reversed.

The *Remole* court cited the rule that, generally, corporations are prohibited from the practice of law, and

determined that the corporation in that case violated that rule when its office manager filed and tried the corporation's lawsuit. "It is clear that the office manager was engaged in the practice of law. We find nothing in the statutes, case law, or Supreme Court Rules which directly or by reasonable implication permits a business corporation to prosecute or defend its own suits in our courts, on any level except through a licensed attorney. It necessarily follows that the plaintiff and its sales manager are in technical contempt of court." *Remole*, 68 Ill. App. 2d at 239. The *Remole* court then held that " '[p]roceedings in a suit by a person not entitled to practice are a nullity, and the suit may be dismissed. If the cause has proceeded to judgment, the judgment is void and will be reversed.' " *Remole*, 68 Ill. App. 2d at 239, quoting 7 C.J.S. Attorney & Client § 16b. Applying the nullity rule to the facts before it, the *Remole* court held that because the legal proceedings in that case were instituted without authority, they violated the law. Therefore, the court concluded, the judgment resulting from such proceedings was void. Accordingly, the appellate court in *Remole* instructed the circuit court to vacate the judgment against the defendant and to dismiss the suit at the corporation's cost.

Although the nullity rule set forth by the court in *Remole* remains valid law, its application to the facts in the instant cause by the appellate court is misplaced. We note that the nullity—or voidness—rule is well established in our courts. See, *e.g.*, *Pratt-Holdampf v. Trinity Medical Center*, 338 Ill. App. 3d 1079, 1083 (2003); *Ratcliffe v. Apantaku*, 318 Ill. App. 3d 621, 626 (2000); *Berg v. Mid-America Industrial, Inc.*, 293 Ill. App. 3d 731, 737 (1997); *City of Chicago v. Witvoet*, 12 Ill. App. 3d 654, 655-56 (1973). This rule is grounded in the fact that there are risks to individual clients and to the integrity of the legal system inherent in representation by an unlicensed

person: The purpose of the nullity "rule is *** to protect litigants against the mistakes of the ignorant and the schemes of the unscrupulous and to protect the court itself in the administration of its proceedings from those lacking requisite skills." *Janiczek v. Dover Management Co.*, 134 Ill. App. 3d 543, 546 (1985), citing *City of Chicago v. Witvoet*, 12 Ill. App. 3d 654, 655-66. Accordingly, it is well settled that the "effect of a person's unauthorized practice on behalf of a party is to require dismissal of the cause or to treat the particular actions taken by the representative as a nullity." *Pratt-Holdampf*, 338 Ill. App. 3d at 1083; see also *People v. Dunson*, 316 Ill. App. 3d 760, 764 (2000); *Blue v. People*, 223 Ill. App. 3d 594, 596 (1992).

In the instant cause, the appellate court erroneously held that the circumstances at bar were similar to the facts presented in *Remole*, and, therefore the nullity rule likewise applied in this matter. The appellate majority reasoned as follows:

"[T]he firm was not properly registered with the supreme court when it obtained the attorney fees award. Like the plaintiff in *Remole*, it performed legal services without authorization and in violation of the law. The general rule of dismissal applies under such circumstances. Accordingly, we agree with the trial court's declaration that the order was void *ab initio*." 344 Ill. App. 3d at 1072.

We reiterate our holding that duly licensed attorneys who practice with a law firm that lacks Rule 721(c) registration do not, by virtue of the unregistered nature of the law firm, engage in the unauthorized practice of law. In the instant matter, there is no dispute that the attorney representing Ford Credit throughout these proceedings was duly licensed to practice law and in good standing with this court. Therefore, it was error for the lower courts to hold that the nullity rule applied to void the award of attorney fees to Ford Credit for the legal

services rendered by this attorney.[2] The goals of protecting the public and ensuring the integrity of the court system which underpin the invocation of the nullity rule were not implicated by the facts in the instant cause.

In sum, we hold that the appellate court erred in affirming the judgment of the circuit court that the failure of the law firms representing Ford Credit in this litigation to register as professional service corporation law firms with this court pursuant to Rule 721(c) rendered the legal services provided by the firms' attorneys the unauthorized practice of law. As stated, there is a fundamental difference between an unlicensed individual engaging in the practice of law and a duly licensed lawyer who practices with an unregistered firm. A duly licensed attorney who belongs to a firm that lacks Rule 721(c) registration does not, by virtue of the unregistered nature of the firm, engage in the unauthorized practice of law. Because Ford Credit was at all times represented by a duly licensed attorney in good standing with this court, the judgment award granting Ford Credit statutory attorney fees should not have been vacated as void.

## CONCLUSION

For the forgoing reasons, the judgment of the appellate court is reversed and the order of the circuit court, voiding its previous order awarding attorney fees to the plaintiff, is vacated.

*Appellate court judgment reversed;*
*circuit court order vacated.*

JUSTICE KILBRIDE, specially concurring:

I respectfully submit this separate writing to clarify two points. First, I generally agree that the rationale in

---

[2]We also observe that, on the date which the circuit court entered its decision to void the attorney fee order, April 9, 2002, the law firm of Schulz & Associates, P.C., was properly registered with this court.

*Storto*, adopted as controlling by the majority (214 Ill. 2d at 387), is sound. I believe, however, that *Storto* and the majority fall short of a complete explanation of the application of Rule 721. Second, I question the majority's statement that "it is only individuals—and not corporations—who are granted the privilege to practice law." 214 Ill. 2d at 387. Taking this second point first, the majority's statement is belied by the plain language of Rule 721(c), providing as follows:

"No corporation or association or limited liability company shall *engage in the practice of law* in Illinois, or open or maintain an establishment for that purpose in Illinois, without a certificate of registration issued by this court." (Emphasis added.) 166 Ill. 2d R. 721(c).

There is no doubt that only qualified individual attorneys may be licensed and "granted the privilege to practice law" (214 Ill. 2d at 387). 188 Ill. 2d R. 701. In fact, the registration of various corporate entities under Rule 721 is based upon the license of individual shareholders, officers, directors, members, or partners. 166 Ill. 2d R. 721(a). Rule 721 is, thus, merely a registration vehicle to permit licensed attorneys to engage in the practice of law through a registered corporate entity.

Upon qualification, this court issues a certificate of registration entitling a registered entity to "engage in the practice of law in Illinois." 166 Ill. 2d R. 721(a). A plain reading of Rule 721 establishes that a registered corporate entity may engage in the practice of law. I acknowledge, however, that in a practical sense, the registered corporate entity does not and cannot practice law on its own. Rule 721 may need to be amended to clarify its precise intent.

Despite the registration requirements of Rule 721, that rule carries no civil or criminal penalties for noncompliance (see *Storto*, 341 Ill. App. 3d at 337), nor does it provide a remedy for private parties. Nevertheless, an entity's noncompliance with Rule 721 can be the

basis for discipline by this court, including termination or suspension of the entity's right to practice law or some other discipline. Rule 721(b) provides in pertinent part:

> "*Any violation* of this rule by the corporation or association or limited liability company *is a ground* for the court *to terminate or suspend the right* of the corporation or association or limited liability company *to practice law* or otherwise to discipline it." (Emphases added.) 166 Ill. 2d R. 721(b).

In the event of a violation, Rule 721(b) further provides for the potential termination or suspension of the entity's registration rights or other discipline by this court. This court's imposition of discipline does not follow automatically from noncompliance with Rule 721, and may be inappropriate in some cases. In my opinion, this is such a case.

Even if some discipline were appropriate, Rule 721 should not be interpreted to void a judgment under the circumstances presented in this record. A Rule 721 violation does not include any retroactive or collateral relief. The only consequence of a Rule 721 violation is the potential for discipline by this court.

Furthermore, the majority correctly determined that the public was not subjected to risk of harm from the entity's unregistered practice of law in this case. 214 Ill. 2d at 391. Simply stated, the defendant cannot complain of any prejudice. Moreover, Rule 721 provides no legal basis for the relief sought by defendant. I therefore agree with the majority that the lower courts erred in applying the nullity rule to void the judgment.