2024 IL App (4th) 240645

NO. 4-24-0645

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 11, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| GARY HAMBLIN, Executor of the Estate of Kathleen Whorrall, Deceased, | ) ) ) | Appeal from the Circuit Court of McLean County |
| Plaintiff-Appellant, | ) ) | No. 22LA151 |
| v. | ) ) ) | |
| BAMIDELE OGUNLEYE, M.D., and ADVANCED WOMEN'S HEALTHCARE, S.C., | ) ) ) | Honorable Donald W. Knapp Jr., |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court, with opinion.
Justices Steigmann and Lannerd concurred in the judgment and opinion.

**OPINION**

¶ 1       Plaintiff, Gary Hamblin, as the executor of the estate of Kathleen Whorrall, seeks to recover on survival and wrongful death claims for the alleged negligence of defendants, Bamidele Ogunleye, M.D., and Advanced Women's Healthcare, S.C. (AWH), in failing to convey pathology results to Whorrall. The trial court granted summary judgment in favor of defendants, holding the claims were barred by the relevant statute of repose's time constraints. 735 ILCS 5/13-212 (West 2018). On appeal, plaintiff argues the statute of repose does not apply here because (1) AWH is not properly licensed and (2) the claims in this case are not medical malpractice claims and do not arise out of patient care. For the reasons that follow, we affirm the trial court's decision.

¶ 2                                    I. BACKGROUND

¶ 3         On June 4, 2018, Kathleen Whorrall underwent a laparoscopic hysterectomy

performed by Bamidele Ogunleye, M.D., at OSF St. Joseph Medical Center in Bloomington,

Illinois. Dr. Ogunleye is a doctor employed by AWH, a medical corporation. According to a

surgical pathology report from June 11, 2018, Whorrall was diagnosed with a "left ovarian tumor

with features suggestive of possible sex cord tumor with annular tubules." After sharing the

results with members of the department, the decision was made to refer the case to the

Department of Surgical Pathology at Mayo Clinic. Whorrall attended several follow up

appointments and was not informed of the pathology results. She was later informed of her

unknown diagnosis in January 2021.

¶ 4         Plaintiff filed his complaint on November 1, 2022, alleging medical negligence

occurring between June 4, 2018, and August 1, 2018. Defendants filed an answer and affirmative

defense based on the statute of repose and later filed a motion for summary judgment. Plaintiff

filed a motion pursuant to Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) and was granted

leave to take depositions. Plaintiff then filed an addendum to his complaint, alleging

"institutional negligence" against AWH and claiming AWH was not licensed by the Department

of Financial and Professional Regulation (Department), and therefore it was not covered by the

statute of repose. In response, defendants filed an amended motion for summary judgment.

¶ 5         The trial court granted defendants' motion for summary judgment, as the claims

were barred by the statute of repose. 735 ILCS 5/13-212 (West 2018). It held the statute applied

to Dr. Ogunleye, as the suit was brought outside of the statute's four-year period and no genuine

issue of material fact existed. As to AWH, the trial court held that—pursuant to *Real v. Kim*, 112

Ill. App. 3d 427 (1983), and *Solich v. George & Anna Portes Cancer Prevention Center of*

*Chicago, Inc.*, 158 Ill. 2d 76 (1994)—it was the intent of the General Assembly for the statute of repose to apply to a corporate entity. Thus, as those claims were also brought outside the statutory four-year limitation, they were barred.

¶ 6        This appeal followed.

¶ 7        II. ANALYSIS

¶ 8        Plaintiff advances two arguments on appeal. First, he argues AWH is not properly licensed under the Medical Corporation Act (805 ILCS 15/1 *et seq.* (West 2018)) and because the statute of repose only applies to those "duly licensed" under state law, it does not cover AWH. Second, plaintiff argues the statute of repose does not apply to the claims in this case because they are not medical malpractice claims, but instead are more precisely characterized as claims of institutional negligence, and do not arise out of patient care.

¶ 9        The trial court granted defendants' summary judgment. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). A trial court's ruling on a summary judgment motion is reviewed *de novo*. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007).

¶ 10        A. Licensure Required Under the Statute of Repose

¶ 11        The statute of repose in this case states:

> "[N]o action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State *** shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing

- 3 -

of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." 735 ILCS 5/13-212(a) (West 2018).

¶ 12 We note at the outset that although the statute does not explicitly apply to medical corporations, the First District appellate court has held that the word "physician," as used in the statute of repose, "includes corporations formed to practice medicine under the Medical Corporations Act." *Real*, 112 Ill. App. 3d at 437. The trial court cited this principle, and neither party disputes it. The point of contention is on the phrase "*duly licensed under the laws of this State*." Plaintiff argues that because AWH did not have a "certificate of registration" from the Department, as required by section 5 of the Medical Corporation Act (805 ILCS 15/5 (West 2018)), it was not "duly licensed," as required by the statute of repose. Therefore, the question before us is whether a medical corporation must obtain a "certificate of registration" in order to be "duly licensed" and benefit from the protections of the statute of repose.

¶ 13 For the following reasons, we hold that a "certificate of registration" is not a "license" under the Medical Corporation Act, and instead, a medical corporation incorporated under the Medical Corporation Act is "duly licensed" if the physician, dentist, registered nurse, or other practitioner or officer from whose conduct the claim arises is properly licensed under the Medical Practice Act of 1987 (Medical Practice Act) (225 ILCS 60/1 *et seq.* (West 2018)).

¶ 14 1. *Statutory Analysis*

¶ 15 The primary objective when construing the meaning of a statute is to ascertain and give effect to the intent of the legislature. *Chatham Foot Specialists, P.C. v. Health Care*

*Service Corp.*, 216 Ill. 2d 366, 382 (2005). In determining legislative intent, our inquiry begins with an examination of the plain language of the statute. *Id.* We view all provisions of a statutory enactment as a whole, and as such, words and phrases should not be construed in isolation but must be interpreted in light of other relevant provisions of the statute. *Id.* In construing a statute, we presume that the General Assembly did not intend absurdity, inconvenience, or injustice. *Id.* As such, we now examine the plain language of the statutes at issue in this case.

¶ 16        Medical corporations are created and governed by the Medical Corporation Act. Section 2 of the Medical Corporation Act provides that

>               "[o]ne or more persons licensed pursuant to the Medical Practice Act of 1987 ***
>
>               may form a corporation pursuant to the 'Business Corporation Act of 1983' ***
>
>               to own, operate and maintain an establishment for the study, diagnosis and
>
>               treatment of human ailments and injuries, whether physical or mental, and to
>
>               promote medical, surgical and scientific research and knowledge ***." *Id.* § 2.

Furthermore, section 2 mandates that "medical or surgical treatment, consultation or advice may be given by shareholders, directors, officers, agents, and employees of the corporation *only if they are licensed pursuant to the Medical Practice Act of 1987*." (Emphasis added.) *Id.*

¶ 17        Notably, the Medical Corporation Act does not contain any requirement that a medical corporation itself be "licensed." Instead, section 5 states: "No corporation shall open, operate or maintain an establishment for any of the purposes set forth in Section 2 of this Act without a certificate of registration from the Department." *Id.* § 5. Corporations may obtain a "certificate of registration" by submitting a written application containing the corporation's name and primary mailing address, the name and address of the registered agent, other information as may be required by the Department, and payment of the $50 registration fee. *Id.* Upon receipt of

- 5 -

the application, the Department investigates the corporation to ensure that the "incorporators, officers, directors and shareholders are all licensed pursuant to the [Medical Practice Act]" and that there are no disciplinary actions pending against any of them. *Id.*

¶ 18        Nearly all of the Medical Corporation Act's uses of the term "license" refer to individuals properly licensed under the Medical Practice Act, like the above language in section 2. For example, section 13 of the Medical Corporation Act mandates that, "[a]ll of the officers, directors and shareholders of a corporation subject to this Act shall at all times *be persons licensed* pursuant to the [Medical Practice Act]." (Emphasis added.) *Id.* § 13(a). Section 13 also states that "[n]o corporation may issue any of its capital stock to anyone other than *an individual who is duly licensed* under the [Medical Practice Act]." (Emphasis added.) *Id.* § 13(b). Section 13 adds that

> "[a] corporation may, for purposes of dissolution, have as its shareholders, directors, officers, agents, and employees *individuals who are not licensed* under the [Medical Practice Act], provided that the corporation *does not render any medical services* nor hold itself out as capable of or available to render medical services during the period of dissolution." (Emphases added.) *Id.* § 13(c).

Moreover, section 10 of the Medical Corporation Act states that the Department "may suspend or revoke any certificate of registration or may otherwise discipline the certificate holder" for several reasons, including "the revocation or suspension of the *license* to practice medicine *of any* officer, director, shareholder or employee not promptly removed or discharged by the corporation." (Emphases added.) *Id.* § 10.

¶ 19        The only place that "license" is used relating to a corporation is in section 6.1 of the Medical Corporation Act, which mandates that if the registration renewal fee is paid by a

check that is not honored by a financial institution due to insufficient funds and the corporation continues to practice, "an additional fee of $100 shall be imposed for practicing without a current license." *Id.* § 6.1. Section 6.1 also states:

> "The Department shall notify the corporation whose certificate of registration has lapsed, within 30 days after the discovery by the Department that such corporation is practicing *without a current certificate*, that the corporation is *operating without a certificate*, and of the amount due to the Department, which shall include the lapsed renewal fee and all other fees required by this Section." (Emphases added.) *Id.*

¶ 20   Therefore, there is ambiguity in the statute regarding the terms "license" and "certificate." The Medical Corporation Act does not define "license." However, section 18 of the Medical Corporation Act states that the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2018)) is incorporated "as if all of the provisions" were included. 805 ILCS 15/18 (West 2018). The Illinois Administrative Procedure Act defines "license" as "the whole or part of any agency permit, certificate, approval, registration, charter, or similar form of permission required by law, but it does not include a license required *solely for revenue purposes*." (Emphasis added.) 5 ILCS 100/1-35 (West 2018).

¶ 21   This apparent ambiguity in the statute is illuminated by analogous case law.

¶ 22                         2. *Analogous Case Law*

¶ 23   Plaintiff relies primarily on *Solich*. In *Solich*, the plaintiff originally brought an action alleging that his condition could have been averted if the defendant had not negligently failed to report to him the results of a chest X-ray taken in 1975. His wife, who eventually succeeded him in the case after he died, asserted her own claim for loss of consortium. *Solich*,

158 Ill. 2d at 78. The question before our supreme court was whether the defendant not-for-profit corporation that administered an examination of the deceased plaintiff fell under the protection of a previous version of the statute of repose at issue in this case. *Id.* at 81-82.

¶ 24　　　　The supreme court held that the defendant did not fall within the parameters of the statute, as it was not a physician, dentist, registered nurse, or hospital and held no licenses under the Medical Practice Act or other similar acts which require licensure. *Id.* at 82. Although the court noted that the "statutory reference to physicians includes corporations formed to practice medicine under the Medical Corporation Act" (*id.* (citing *Real*, 112 Ill. App. 3d at 436)), the court concluded that the defendant was "not licensed and does not qualify to be licensed as a medical corporation under that statute" (*id.* at 82-83). Plaintiff also relies on a line from *Real*, stating that a "corporation formed to practice medicine must be licensed by the State." *Real*, 112 Ill. App. 3d at 436. We follow the holdings in *Solich* and *Real* that the statute of repose only covers medical corporations who are "duly licensed" and are properly incorporated as a medical corporation. However, neither *Solich* nor *Real* define or reason how a medical corporation is "duly licensed."

¶ 25　　　　Our supreme court's decision in *Chatham* is instructive on this issue. In *Chatham*, the court held that the terms "license" and "certificate of registration," as used in the Professional Service Corporation Act (805 ILCS 10/1 *et seq.* (West 2000)), are not "functionally equivalent." *Chatham*, 216 Ill. 2d at 398. There, the other statute at issue was the Podiatric Medical Practice Act of 1987 (Podiatric Medical Practice Act) (225 ILCS 100/1 *et seq.* (West 2000)).

¶ 26　　　　Plaintiff argues that because the statutes in the current case are different, *Chatham* is inapplicable. We disagree due to the overwhelming similarities between the statutes in *Chatham* and the statutes in the case before us. The court in *Chatham* analyzed provisions of the

Podiatric Medical Practice Act and found that it contained a licensing structure for practitioners and was enacted for the public health, safety, and welfare, whereas the Professional Service Corporation Act was enacted to allow professionals to join together and incorporate. The provisions of the Professional Service Corporation Act the court examined are similar to the Medical Corporation Act before us now. For example, section 12 of the Professional Service Corporation Act (805 ILCS 10/12 (West 2018)) and section 5 of the Medical Corporation Act (805 ILCS 15/5 (West 2018)) both govern "certificates of registration" and are nearly identical, as are section 13 of the Professional Service Corporation Act (805 ILCS 10/13 (West 2018)) and section 10 of the Medical Corporation Act (805 ILCS 15/10 (West 2018)), which concern the suspension or revocation of certificates of registration. Because of these striking similarities and others, we find the reasoning in *Chatham* persuasive and informative.

¶ 27        In *Chatham*, the issue was whether a contract was void because the plaintiff failed to obtain a certificate of registration from the Department, as required by the Professional Service Corporation Act. The court began its analysis with the principle that "courts will not enforce a contract involving a party who does not have a license called for by legislation that expressly prohibits the carrying on of the particular activity without a license where the legislation was enacted for the protection of the public, not as a revenue measure." (Internal quotation marks omitted.) *Chatham*, 216 Ill. 2d at 381. Therefore, the court stated the question presented was "whether the [Professional Service Corporation Act's] certificate of registration requirement is an administrative mechanism by which professionals may provide their services in the corporate form, or whether it is a regulatory provision intended to protect the health, safety and welfare of the public." *Id.* at 382. In other words, similar to the issue in the case before us,

the *Chatham* court considered whether the certificate of registration required by the Professional Service Corporation Act was a license.

¶ 28    When reviewing the Professional Service Corporation Act's certificate requirement, the *Chatham* court stated:

> "Upon reviewing the relevant provisions of the Podiatric Medical Practice Act and the [Professional Service Corporation Act], we agree with plaintiff that the requirement imposed by section 12 of the [Professional Service Corporation Act] on professional service corporations to obtain a certificate of registration was not enacted as a regulatory measure to protect the public health, safety and welfare. We hold that the appellate court erred in concluding that the terms 'license' and 'certificate of registration' are synonymous, as nothing in the relevant statutory provisions supports the appellate court's interpretation that a 'license' and a 'certificate of registration' are functionally equivalent." *Chatham*, 216 Ill. 2d at 389.

¶ 29    The court analyzed the statutory prerequisites for a certificate of registration under the Professional Service Corporation Act and a license under the Podiatric Medical Practice Act. It found the prerequisites for a license are more rigorous and require the applicant to "prove competency in that profession." *Id.* at 392. In contrast, obtaining a certificate of registration is simpler, requiring only an application and a $50 registration fee; it requires no professional training or examination. *Id.* The Professional Service Corporation Act requires that individuals seeking to incorporate must be licensed. *Id.* at 392-93. This is similar to the Medical Corporation Act's requirements for incorporation. See 805 ILCS 15/2 (West 2018). The court reasoned:

"In other words, the [Professional Service Corporation Act] provides that an individual or group of individuals, who are currently 'licensed as individuals to engage in the profession,' may form a professional service corporation through which they may provide their services to the public. There is no need for the legislature to require that the individuals forming the professional service corporation be *licensed* as a prerequisite to that corporation obtaining a *certificate of registration* unless a license and a certificate of registration are two separate concepts which serve two distinct purposes." (Emphases in original.) *Chatham*, 216 Ill. 2d at 393.

¶ 30    Furthermore, the court rejected language in the Professional Service Corporation Act stating that "license" and "certificate of registration" were synonymous. Section 3.3 of the Professional Service Corporation Act defines "license" as including a "certificate of registration." 805 ILCS 10/3.3 (West 2000). The *Chatham* court rejected this explicit language and reasoned:

"Section 3.3 of the [Professional Service Corporation Act] defines 'license' as 'a license, certificate of registration or any other evidence' that establishes 'the satisfaction of the requirements of this State *** for the practice of a professional service.' *** 805 ILCS 10/3.3 (West 2000). Thus, pursuant to the plain language of section 3.3, anything deemed evidence of satisfying the state requirements to lawfully practice a profession falls within the definition of a 'license.' It logically follows, therefore, that anything called a 'certificate of registration' which does not demonstrate the satisfaction of state requirements to practice a profession is

not a 'license' under the [Professional Service Corporation Act]." (Emphases omitted.) *Chatham*, 216 Ill. 2d at 393-94.

This line of reasoning further supports the court's holding that whether the terms "license" and "certificate of registration" are interchangeable depends on if they are "functionally equivalent."

¶ 31 The court also analyzed the statutory provisions of the Professional Service Corporation Act that require the incorporators to be licensed and keep up their licenses. *Id.* at 394-95. The court concluded that the Professional Service Corporation Act does not "assure professionalism and competence in the practice of podiatry. Rather, the [Professional Service Corporation Act] provisions underscore that the professional service corporation is simply the vehicle by which the General Assembly allows licensed individuals to practice their profession in the corporate form, and thereby reap the benefits of incorporation." *Id.* at 396.

¶ 32 The court additionally relied on the fact that there were no civil or criminal penalties in the Professional Service Corporation Act associated with noncompliance with the "certificate of registration" requirement, other than simple fees. The court reasoned that larger penalties "would indicate that the provision was enacted because it had a significant impact on the public welfare." *Id.* at 397 (citing *Riggs v. Woman to Woman, Obstetrics & Gynecology, P.C.*, 351 Ill. App. 3d 268, 272 (2004)). Similarly, section 13.5 of the Medical Corporation Act states:

"Whenever the Department has reason to believe a corporation has opened, operated, or maintained an establishment for any of the purposes for which a corporation may be organized under this Act without a certificate of registration from the Department, the Department may issue a notice of violation to the corporation." 805 ILCS 15/13.5 (West 2018).

- 12 -

The notice provides 30 days to either provide an answer or file an application to comply, along with a $50 fee and $100 for each year the corporation operated without the certificate. *Id.* If the corporation fails to do this, the Department "may institute disciplinary proceedings against the corporation and may impose a civil penalty up to $1,000." *Id.* Thus, like the Professional Service Corporation Act, the lack of serious penalties indicates that the Medical Corporation Act was not intended to protect the public welfare.

¶ 33    Further supporting its decision, the *Chatham* court cited *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371 (2005). In *Ford Motor*, our supreme court explained that there is a

> "fundamental difference between an unlicensed individual representing a party in legal proceedings or performing activities traditionally considered to be the 'practice of law' and duly licensed attorneys who happen to belong to a law firm that has not filed its registration and paid its fees pursuant to [Illinois Supreme Court] Rule 721(c) [(eff. July 1, 2003)]. The material inquiry in assessing whether there has been an unauthorized practice of law is whether the individual who acts on behalf of a client is duly licensed by this court, as it is only individuals—and not corporations—who are granted the privilege to practice law." *Id.* at 387.

The court in *Ford Motor* reasoned that the public faced a risk of harm from unlicensed individuals engaging in the practice of law and that an unregistered law firm did not pose a risk of harm to the public, but, rather, harmed itself. *Id.* at 387-88. We find the reasoning of both the *Chatham* and *Ford Motor* courts applicable to the interplay between the Medical Practice Act and the Medical Corporation Act.

¶ 34    3. *The Legislative Structure of the Medical Practice Act*

*and Medical Corporation Act*

¶ 35    The practice of medicine is governed by the Medical Practice Act, similar to how the practice of podiatry is governed by the Podiatric Medical Practice Act. The Medical Practice Act, not the Medical Corporation Act, sets forth the requirements to be licensed to practice. To apply for a license under the Medical Practice Act, an individual must submit an application, along with satisfactory evidence of "good moral character," "preliminary and professional education required by [the Medical Practice Act]," and physical, mental, and professional capability of "practicing medicine with reasonable judgment, skill, and safety." 225 ILCS 60/9 (West 2018). In determining professional capacity, the medical board may consider the following criteria:

"(1) Medical research in an established research facility, hospital, college or university, or private corporation.

(2) Specialized training or education.

(3) Publication of original work in learned, medical, or scientific journals.

(4) Participation in federal, State, local, or international public health programs or organizations.

(5) Professional service in a federal veterans or military institution.

(6) Any other professional activities deemed to maintain and enhance the clinical capabilities of the applicant." *Id.*

¶ 36    Conversely, to apply for a certificate of registration under the Medical Corporation Act, incorporators (licensed under the Medical Practice Act) need only submit an application and pay a registration fee. There is a difference in the purpose of a "license" and a "certificate of registration." Similar to the Podiatric Medical Practice Act, a "license" under the Medical Practice Act is a substantive and regulatory check intended to (1) ensure that an

individual is qualified to practice and (2) protect the public health, safety, and welfare. On the other hand, a "certificate of registration" as required by the Medical Corporation Act and the Professional Service Corporation Act is part of an administrative process by which individuals can benefit from the corporate form and the state can raise revenue. The Medical Corporation Act's various provisions require that incorporators, officers, directors, shareholders, and employees be licensed to practice, not the corporation. See 805 ILCS 15/5, 13 (West 2018). Like the Professional Service Corporation Act, the legislative scheme of the Medical Corporation Act demonstrates that it was intended to allow one or more individuals who are licensed under the Medical Practice Act to perform the same professional or related services together and form a corporation through which they can render such services to the public.

¶ 37        Also supporting our decision are the penalties for violations of the Medical Practice Act and the Medical Corporation Act. Under the Medical Corporation Act, a "certificate of registration" can be suspended or revoked for any of the following reasons:

> "(a) the revocation or suspension of the license to practice medicine of any officer, director, shareholder or employee not promptly removed or discharged by the corporation; (b) unethical professional conduct on the part of any officer, director, shareholder or employee not promptly removed or discharged by the corporation; (c) the death of the last remaining shareholder; or (d) upon finding that the holder of a certificate has failed to comply with the provisions of this Act or the regulations prescribed by the Department." *Id.* § 10.

It is telling that each subpart pertains to conduct by an individual, not the corporation itself. Moreover, as discussed earlier in this decision, the financial penalties contained in the Medical Corporation Act are minor. See *id.* §§ 6.1, 13.5. Contrast this with the penalties contained in the

Medical Practice Act. Section 22 states that the Department "may revoke, suspend, place on probation, reprimand, refuse to issue or renew, or take any other disciplinary or non-disciplinary action as the Department may deem proper with regard to the license or permit of any person issued under this Act, including imposing fines not to exceed $10,000." 225 ILCS 60/22(A) (West 2018). Violations under this section include various criminal offenses, gross negligence, fraud, habitual or excessive drug use, practice under a false name, and the falsification of records. *Id.* It is clear that violations committed by an individual under the Medical Practice Act are more severe than those committed by a corporation under the Medical Corporation Act.

¶ 38      In sum, based on a review of case law and the statutory language, the terms "license" and "certificate of registration" are not functionally equivalent as used in the Medical Practice Act and Medical Corporation Act. Therefore, obtaining a "certificate of registration" does not make a medical corporation "duly licensed," as required by the statute of repose. Likewise, failure to obtain a certificate does not mean a medical corporation lacks a license.

¶ 39                              4. *Application to This Case*

¶ 40      This leaves us in a difficult position where (a) a medical corporation is covered by the statute of repose, (b) the legislative intent of the General Assembly clearly indicates that the statute of repose applies only to entities "duly licensed," and (c) the Medical Corporation Act does not require medical corporations to be licensed and therefore a medical corporation is essentially either never "duly licensed" or always "duly licensed." This is an absurd and illogical outcome, which we are to avoid. As we stated earlier, in construing a statute, we presume that the General Assembly did not intend absurdity, inconvenience, or injustice. *Chatham*, 216 Ill. 2d at 382. It would certainly be an absurd and unjust result if a practitioner must be licensed in order to benefit from the statute of repose, but a medical corporation may benefit indeterminately. It

- 16 -

would also be absurd and against the intent of the Generally Assembly for a medical corporation to never benefit from the protections of the statute of repose.

¶ 41        After a thorough review of the statutory language of the statute of repose, the legislative scheme laid out by the Medical Corporation Act and Medical Practice Act, and the case law examined above, it is clear that licensure to conduct the actual practice of medicine rests on the individuals in a medical corporation. And, as the statute of repose covers actions for damages "arising out of patient care," we hold that a medical corporation incorporated under the Medical Corporation Act is "duly licensed" if the physician, dentist, registered nurse, or other practitioner or officer from whose conduct the claim arises out of is properly licensed under the Medical Practice Act.

¶ 42        In this case, the trial court found that Dr. Ogunleye was "duly licensed" under Illinois law and that the statute of repose applied to him. Plaintiff did not appeal that outcome. Therefore, as the claims arise out of patient care provided by Dr. Ogunleye, an employee of AWH who was properly licensed under Illinois law, AWH is likewise "duly licensed" and protected by the statute of repose.

¶ 43        Plaintiff argues that the questions surrounding AWH's registration status should create a genuine issue of material fact. A material fact is one that, under the applicable law, could affect the outcome of the case. *Stivers v. Bean*, 2014 IL App (4th) 130255, ¶ 21. Due to our holding in this case, a medical corporation's registration status has no bearing on its status as a "duly licensed" corporation. Therefore, it is not a material fact.

¶ 44                B. Claims Arising Out of Patient Care

¶ 45        Plaintiff's second contention is that AWH's failure to inform the deceased of her diagnosis was not a medical malpractice claim, but rather an institutional negligence claim. As

such, the statute of repose for medical malpractice claims would not apply and we should reverse the trial court's decision.

¶ 46       Again, the statute of repose at issue in this case states that:

"[N]o action for damages for injury or death against any physician *** or hospital duly licensed *** whether based upon tort, or breach of contract, or otherwise, *arising out of patient care* shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known *** of the existence of the injury or death for which damages are sought in the action, whichever *** occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act *** alleged in such action to have been the cause of such injury or death." (Emphasis added.) 735 ILCS 5/13-212 (West 2018).

¶ 47       Thus, plaintiff's arguments that the claims in this case are not medical malpractice claims is irrelevant to the analysis; in order to enjoy the protections of the statute, the conduct must "arise out of patient care." Plaintiff also argues the conduct in this case does not "arise out of patient care." Instead, he characterizes it as institutional miscommunication. Defendant argues the conduct did "arise out of patient care" and falls under the purview of the statute. Courts have held that the phrase "arising out of patient care" has a broad meaning. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 14 (2007) ("It is clear that the legislature intended the statute of repose to operate in a very broad manner and it has been interpreted in that manner by courts addressing the issue.") "The question is not whether the plaintiff has alleged medical negligence or ordinary negligence. Rather, the sole issue is whether the plaintiff's claim arose from patient care." *Id.*

¶ 48     In *Orlak*, our supreme court addressed a similar set of facts. There, the plaintiff filed a complaint against Loyola University Health System, alleging it was negligent for not contacting her about the possibility that she contracted hepatitis C from a blood transfusion. *Id.* at 4. The hospital filed a motion to dismiss under the statute of repose, stating her complaint was time barred. The motion was granted by the trial court, and on appeal, the appellate court affirmed the trial court's holding. *Id.* The supreme court agreed, stating, "Only claims 'arising out of patient care' are affected by the medical malpractice statute of repose." *Id.* at 8. In order for an injury to "arise out of patient care," there must simply be a causal connection between the patient's medical care and the alleged injury. *Id.* at 16. The court in *Orlak* concluded that, although the failure to notify the plaintiff was not medical care, the duty to notify her flowed directly from the blood transfusion that was given in the course of treating her for burns. *Id.* The injury and the medical care were, therefore, causally connected, and her claims arose out of patient care. *Id.* at 17.

¶ 49     Similarly, then, plaintiff's claim here also arises out of patient care. Whorrall underwent surgery performed by Dr. Ogunleye at AWH. A report from that surgery included a diagnosis of "left ovarian tumor with features suggestive of possible sex cord tumor with annular tubules." The case was referred to Mayo Clinic for a second opinion, which confirmed "mixed granulosa cell tumor and sex cord stromal tumor with annular tubules." Plaintiff alleges AWH failed to inform Whorrall of these results, which resulted in an injury. So, just as in *Orlak*, her injury was causally connected to the medical care she received, and her claim therefore "arose out of patient care."

¶ 50     Plaintiff's attempts to characterize the claims in this case as "institutional negligence" fail. Plaintiff argues two propositions: (1) that institutions may be held negligent in

- 19 -

their own capacity and not merely under a *respondeat superior* theory and (2) that institutional negligence is not medical malpractice. We need not address either of these arguments, as the only issue is whether the conduct alleged of AWH "arose out of patient care," and we conclude that it did.

¶ 51                                                III. CONCLUSION

¶ 52            In conclusion, we affirm the trial court's judgment. The statute of repose bars plaintiff's claims against AWH, as the claims arise out of patient care and AWH was duly licensed as required by the statute of repose.

¶ 53            Affirmed.

*Hamblin v. Ogunleye*, 2024 IL App (4th) 240645

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 22-LA-151; the Hon. Don Knapp, Judge, presiding. |
| **Attorneys for Appellant:** | Chase T. Molchin, of Ginzkey & Molchin, LLC, of Bloomington, for appellant. |
| **Attorneys for Appellee:** | Jonathan J. Bobell and Margaret M. Rhoades, of Livingston, Barger, Brandt & Schroeder, LLP, of Bloomington, for appellees. |