2018 IL App (3d) 170498

Opinion filed December 5, 2018

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| | | |
|---|---|---|
| JODY D. KIMBRELL, MICHAEL D. KIMBRELL, and ANNA F. ISAACS, | ) ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiffs, | ) ) | Appeal No. 3-17-0498 Circuit No. 16-MR-752 |
| v. | ) ) | Honorable |
| STATE BANK OF SPEER, | ) ) | James A. Mack, Judge, presiding. |
| Defendant-Appellee | ) ) | |
| (Jody D. Kimbrell, Plaintiff-Appellant). | ) | |

PRESIDING JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices Holdridge and McDade concurred in the judgment and opinion.

**OPINION**

¶ 1     Jody D. Kimbrell, a nonlawyer proceeding *pro se*, filed a complaint, which she

subsequently amended twice, on behalf of herself and also on behalf of her mother and her

husband. The trial court dismissed Kimbrell's second amended complaint. Kimbrell appealed.

We affirm the trial court's dismissal order of Kimbrell's second amended complaint as a nullity

due to Kimbrell's unauthorized practice of law.

¶ 2                                    FACTS

¶ 3                                    I. Background

¶ 4          In this case, Kimbrell filed an original complaint pertaining to certain property, which was dismissed without prejudice, a first amended complaint, which was dismissed without prejudice, and a second amended complaint, which was dismissed with prejudice. Kimbrell's pleadings asserted a mass amount of immaterial and superfluous facts and contained tangential and superfluous allegations. Kimbrell's pleadings appear to be attempts to state causes of action for slander of title and to quiet title related to certain property. In making their supporting arguments in this case, both parties made somewhat obscure references to proceedings in other cases that involved the plaintiffs and the property at issue in this case. We have reviewed some of those other cases and the filings made in this case, which provided the following information.

¶ 5          The subject property appears to involve a portion of property located near Jeth Court Apartments, off of University Street, in Peoria, Illinois. In 1997, plaintiffs purchased the Jeth Court apartment complex. *Kimbrell v. Illinois-American Water Co.*, 2013 IL App (3d) 110790-U, ¶ 4. In May 2005, On May 6, 2005, plaintiffs executed two promissory notes in favor of Republic Bank for $2,051,000 and $294,000, secured by first and second mortgages on seven "Jeth Court" tracts of land and three "University Street" tracts of land. *Republic Bank of Chicago v. Kimbrell*, 2015 IL App (3d) 140675-U, ¶¶ 5, 10. On August 1, 2008, plaintiffs paid off the $2,051,000 Republic Bank note (by refinancing the debt under Kimbrell's limited liability company, which resulted in Republic Bank releasing the mortgages, except for the mortgages on two University Street tracts of land because the note for $294,000 remained outstanding. *Id.* ¶¶ 19, 23-24, 34-35. On August 1, 2008, Kimbrell's limited liability company obtained a $2,264,000 loan from the Royal Bank of Canada (Royal Bank), secured by a mortgage that was subsequently assigned to the Federal National Mortgage Association (Fannie Mae). *Federal*

*National Mortgage Ass'n v. Kimbrell*, 2016 IL App (3d) 140662-U, ¶¶ 4, 6, 10, 25. On August 12, 2010, Kimbrell's limited liability company transferred a portion of the Fannie Mae mortgaged property to the plaintiffs in this case (Kimbrell, her husband, and her mother) so they could have a building constructed on the property. *Id.* ¶¶ 6, 9. According to the pleadings in this case, between July 27, 2009, and May 12, 2010, defendant State Bank of Speer gave plaintiffs four advances on a $400,000 construction loan for the construction of that building.

¶ 6          On February 7, 2012, Fannie Mae filed a foreclosure complaint (case No. 12-CH-97)—against the plaintiffs in this case (Kimbrell, her husband, and her mother), Kimbrell's limited liability company, a personal guarantor of the loan, and State Bank of Speer (defendant in this case), alleging that Kimbrell's limited liability company defaulted on the note by failing to make payments, making an unauthorized transfer of mortgaged property, and causing the property to be encumbered by two mortgages held by State Bank of Speer. *Id.* ¶¶ 5, 9. On August 4, 2014, the trial court granted Fannie Mae's motion for summary judgment, entered a judgment of foreclosure and sale, and granted a motion for sanctions against Kimbrell pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013) by ordering Kimbrell not to make any further filings in that case or file any other lawsuits against those parties without prior leave of court. *Federal National Mortgage Ass'n*, 2016 IL App (3d) 140662-U, ¶¶ 10-13.

¶ 7          On August 29, 2014, Kimbrell filed for bankruptcy. *In re Kimbrell*, No. 14-81545, 2016 WL 1620228, slip op. at *1 (Bankr. C.D. Ill. Apr. 20, 2016).

¶ 8          On October 6, 2014, a judicial sale for "a portion" of the foreclosed property was sold to Fannie Mae as the highest bidder and its certificate of sale was assigned to BV Sun Grove, LLC (a holding company created by Fannie Mae to hold title to the property). *Federal National Mortgage Ass'n*, 2016 IL App (3d) 140662-U, ¶¶ 14, 20. In support of defendant's motion to

dismiss in this case, defendant attached documents from the foreclosure case. The sheriff's deed, certificate of sale, and report of sale for the judicial sale of the "portion" of the foreclosed property that took place on October 6, 2014, pertained to six tracts of land, with tract 1 including parcels A and B and having property identification No. 14-17-126-001 (now property identification No. 14-17-126-018 and "part of 14-17-126-020")—common address of 1347 Jeth Court.[1] The sale was adjourned to a later date with respect to the remaining portion of the collateral—"that being a part of 14-17-126-020."

¶ 9        On April 24, 2015, Fannie Mae requested to modify the automatic bankruptcy stay in Kimbrell's bankruptcy case so that the foreclosure sale could take place on the remaining parcel of property.[2] *In re Kimbrell*, No. 14-81545, 2015 WL 3424458, slip op. at *1 (Bankr. C.D. Ill. May 27, 2015). On May 27, 2015, the bankruptcy court lifted the stay, finding Fannie Mae had proven a lack of equity in the property, noting the bankruptcy case was part of a larger ongoing dispute between the plaintiffs in this case and several lenders "in various proceedings pending in other courts" and lifting the say would "shift the dispute back to state court." *Id.* at *4.

¶ 10        Documents attached to defendant's motion to dismiss that were filed in Kimbrell's foreclosure case indicate that on August 5, 2015, another order confirming sale (presumably of

---

[1]The other tracts were listed as property identification Nos. 14-17-126-003 (1301 Jeth Court), 14-17-126-006 (1300 Jeth Court), 14-17-126-011 (1317 Jeth Court), 14-17-126-010 (1308 Jeth Court), and 14-17-126-012 (6608 N. University Street).

[2]This remaining parcel of property had been improved with a 5-unit apartment building—3½ units were located on a parcel of property mortgaged by Fannie Mae and the other 1½ units were located on a parcel of property mortgaged by State Bank of Speer. A report submitted by a certified real estate appraiser indicated that at some point in 2011, those two separate parcels had been combined to create a new parcel, which was assigned property identification No. 14-17-126-020. A relief of the bankruptcy stay had previously been granted in regard to the other Jeth Court parcels because those parcels were owned by Kimbrell's limited liability company and were not part of the plaintiffs' individual debtors' estates. After crediting the bid price for the sale of those other parcels, $515,575.25 was still due and the remaining parcel that secured that balance was valued at $70,000. *In re Kimbrell*, No. 14-81545, 2015 WL 3424458, slip op. at *1-2 (Bankr. C.D. Ill. May 27, 2015).

the remaining property) was entered, which ordered that a sheriff's deed to the property be issued to Fannie Mae or its assignee. The sheriff's deed conveyed the property to BV Sun Grove, LLC—property with identification No. "14-17-126-001 (now 14-17-126-018 and part of 14-17-126-020)." A quitclaim deed recorded on July 21, 2016, from BV Sun Grove, LLC, to third-party Jeth Court Homes, LLC, included the foreclosed property that had been sold at the judicial sale on October 6, 2014, and, in addition, the property conveyed in the sheriff's deed of August 5, 2015—"parcel C" of tract 1, property identification Nos. "14-17-126-018 and 14-17-126-020" (rather than just a "part of" property identification No. 14-17-126-020).

¶ 11     During pendency of the foreclosure case, Kimbrell had filed five separate complaints (consolidated into case No. 12-MR-272) against multiple defendants alleging wrongdoing by those defendants in the mortgage foreclosure process.[3] *Kimbrell v. Wells Fargo Multifamily Capital & Commercial Mortgage Servicing*, 2015 IL App (3d) 140718-U, ¶¶ 6-7. Those complaints were dismissed with prejudice as having previously been heard and denied in the foreclosure proceeding. *Id.*[4] In that case, on October 17, 2014, the trial court granted the defendants' motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013) against Kimbrell. The sanctions order indicated:

> "The purpose of Rule 137 is to prevent the filing of false or frivolous
> lawsuits. The Rule is in place to prevent abuse of the judicial process by parties
> who make claims based on unsupported allegations of fact or law. Ms. Kimbrell's
> use of the legal system could not more squarely within these definitions. In

---

[3]Defendant State Bank of Speer was not one of the named defendants in that case. See *Kimbrell v. Wells Fargo Multifamily Capital & Commercial Mortgage Servicing*, 2015 IL App (3d) 140718-U.

[4]On appeal, on September 30, 2015, this court affirmed the dismissal of the claims with prejudice, finding the doctrine of *res judicata* applied where Kimbrell had raised the same claims at issue on appeal in the mortgage foreclosure action and the remaining claims were forfeited because Kimbrell did not raise those claims on appeal. *Wells Fargo*, 2015 IL (3d) 140718-U, ¶¶ 14, 16.

accordance with the requirement of Rule 137, this court specifically finds that Ms. Kimbrell has a long history of filing frivolous, vexatious and harassing lawsuits and pleadings in this court and the federal courts of this district. Ms. Kimbrell has been previously admonished in other litigation \*\*\* to stop filing frivolous, vexatious lawsuits, or she would face sanctions from the Federal court and/or this court. Instead of heading [*sic*] those warnings, Ms. Kimbrell filed more lawsuits and appeals. The court finds that Ms. Kimbrell's lawsuits are frivolous, vexatious and are designed to harass Defendants and needlessly increase the cost of litigation. The court finds that Ms. Kimbrell's repeated *pro se* filings interfere with the orderly administration of justice and divert scarce judicial resources from cases with merit.

It is the judgment of this Court that reasonable and necessary restraints must be imposed upon Plaintiff and her ability to file motions and pleadings in this consolidated Case no. 14 MR 272 against the Defendants herein and their agents or representatives.

It is hereby ordered that Jody D. Kimbrell, or anyone acting on her behalf, is enjoined from filing any new motions or pleadings in this Case No. 14 MR 272 against the Defendants herein or their agents or representatives and from filing any new civil actions or proceedings in any court located in the 10th Judicial Circuit against the Defendants herein or their agents or representatives, without first obtaining leave of Court. Ms. Kimbrell is specifically enjoined and prohibited from drafting any pleading, motion, complaint or written document of

6

any type in the name of any third party or for the use or benefit of any third party, specifically including, but not limited to, Anna Isaacs and Michael Kimbrell.

To the extent Ms. Kimbrell desires to file motions or pleadings against the Defendants herein or their agents or representatives in this Case No. 14 MR 272, she shall file a 'Motion Seeking Leave to File Pursuant to Court Order' and shall attach the proposed motion or pleading to the [motion]. She shall set the Motion for hearing before the presiding judge in this matter. ***

To the extent Ms. Kimbrell desires to file a new lawsuit against the Defendants herein or their agents or representatives in any court located in the 10th Judicial Circuit, she shall file a 'Motion Seeking Leave to File Pursuant to Court Order' and shall attach the proposed Complaint or pleading to the [motion]. She shall set the Motion for hearing before the chief judge. ***

Ms. Kimbrell is further admonished that, as someone not licensed to practice law in this state, she may not draft pleadings or file complaints on behalf of her limited liability company [LLC] (Kimbrell Realty/JETH Court, LLC) or any other corporate or business entity or she risks being sanctioned for the unauthorized practice of law."

¶ 12                                    II. Pleadings and Proceedings in This Case

¶ 13                                         A. Original Complaint

¶ 14        On October 6, 2016, Kimbrell, proceeding *pro se*, with her husband (Michael D. Kimbrell), and her mother (Anna F. Isaacs) also named as plaintiffs, signed and filed a complaint against State Bank of Speer and its president, Steven J. Leuthold, for "declaratory judgment."

7

Kimbrell alleged that plaintiffs were the owners of property "known as 14-17-126-020"[5]; between July 27, 2009, and May 12, 2010, State Bank of Speer had given plaintiffs four advances on a $400,000 construction loan, which totaled, $401,625; and all the construction loan notes and mortgages were paid by the plaintiffs. Kimbrell attached to the complaint what she alleged were copies of the paid notes. Kimbrell alleged that defendants unlawfully clouded plaintiff's title and requested a declaratory judgment indicating, among other things, that plaintiffs owned the properties and were entitled to "the quiet and peaceful possession" of the subject property.

¶ 15    In response, defendants filed a motion to dismiss the complaint. Defendants argued that plaintiffs had made no allegations against Leuthold in his individual capacity and that plaintiff's pleading failed to state a claim. At the hearing on the motion to dismiss, defendants also argued that the subject property had been foreclosed upon and was now owned by a third party who was in possession of the entire property. Defendant also sought a dismissal of plaintiffs' complaint based upon the sanctions order entered in case No. 14-MR-272, on October 17, 2014, even though defendant was not a named party in that case.

¶ 16    At the hearing on defendants' motion to dismiss, defendants argued that valid loan documents existed to bar plaintiffs from the relief they sought and that the affidavit of Leuthold, which was attached to the motion to dismiss, established that the parties entered into five loans secured by mortgages, which were subsequently consolidated into "two new and larger loans" in

---

[5]Kimbrell further described property identification No. 14-17-126-020 as having been combined from various other parcels of property and listed identification numbers for those various parcels of property.

the amounts of $487,625 and $231,482.89.[6] Defendants argued that the two loans were "current outstanding loans" in default, but collection efforts could not be undertaken due to plaintiffs having pending bankruptcy proceedings.

¶ 17 In ruling, the trial court noted that the order from case No. 14-MR-272 had been addressed by the chief judge in another case involving Kimbrell (case No. 16-CH-108) and had been read "in a very limited fashion." The trial court found plaintiffs had made no allegations against Leuthold, individually, and granted the motion to dismiss Leuthold, with prejudice. The trial court also granted defendants' motion to dismiss for a failure to state a claim pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)) with plaintiffs allowed 28 days to file an amended complaint.

¶ 18 B. First Amended Complaint

¶ 19 On December 1, 2016, Kimbrell filed a *pro se* first amended complaint against State Bank of Speer, with her mother and husband also named as plaintiffs in the caption. Kimbrell described the action as an action to quiet title to real property regarding property identification No. 14-17-126-020.[7] Kimbrell alleged the subject property was not part of the property foreclosed upon by Fannie Mae. She also alleged that State Bank of Speer had filed a claim as a creditor with a perfected mortgage lien and note of debt in her bankruptcy proceedings even

---

[6]Leuthold's affidavit indicated that he never interacted with plaintiffs outside of his capacity as a representative of the State Bank of Speer; plaintiffs entered into five loans from July 27, 2009, through November 8, 2010, and two subsequent loans consolidating those previous loans in the amounts of $487,625 (secured by mortgage Nos. 1, 2, and 3) and $231,482.89 (secured by mortgage Nos. 4 and 5), which had not been paid or released and were in default.

[7]Kimbrell indicated that this was an action to quiet title to property located at 1324 to 1330 W. Jeth Court, 1306 W. Jeth Court and 6522, 6600, and 6608 N. University Street in Peoria, Illinois. She appears to further alleged that property identification No. 14-17-126-020 had been "combined from" various parcels of property identification Nos. 14-17-126-004 (parcels A, B, and C), 14-17-126-015, 14-17-126-016, 14-17-126-017, and 14-17-126-012 (an easement located on property identification No. 14-17-126-004 and frontage parcels A, B, and C).

though it did not have a perfected mortgage lien against the subject property. Kimbrell alleged that she was in possession of the original paid notes (related to the $400,000 construction loan) and defendant failed to release the corresponding mortgages. Kimbrell contended that defendant had released the original construction loan and never closed the mortgage related to a subsequent note for $487,625.

¶ 20     In response, defendant filed a motion to dismiss, arguing that the first amended complaint failed to state a cause a claim. Defendant also requested that the trial court rule "the Standing Order from October 17, 2014" that had been entered in case No. 14-MR-272 was applicable to the parties in this case.

¶ 21     At the hearing on defendant's motion to dismiss, defendant's attorney indicated that plaintiffs had constructed a building on the property line of where Fannie Mae's mortgage ended and State Bank of Speer's mortgage began. As a result, Fannie Mae had a mortgage for about two-thirds of that building and State Bank of Speer had a mortgage for the remaining one-third. Defendant's attorney argued the only property plaintiffs could be in possession of was one-third of a building and two vacant out lots because that was the only property that Fannie Mae had not foreclosed upon. Defendant's attorney also argued that while plaintiffs' original loan had been refinanced more than once, at no point was the debt released. Defendant's attorney additionally requested that the order of October 17, 2014, entered in case No. 14-MR-272, be found to be applicable to defendant and the law firm of defendant's attorney.

¶ 22     Kimbrell argued that State Bank of Speer refused to close on a mortgage when it was discovered that the building encroached on property owned by Kimbrell's limited liability company, which Fannie Mae was mortgagee. Kimbrell argued that State Bank of Speer does not

have proper closing documents, the note was not notarized, and there was no corresponding mortgage.

¶ 23    The trial court granted State Bank of Speer's motion to dismiss, without prejudice. The trial court also denied defendant's request to be deemed an intended party of the standing order of October 17, 2014, entered in case No. 14-MR-272. The trial court admonished Kimbrell, "you may, in fact, have a cause of action for which some relief may be granted, but unless it's properly pled, we can't even get there." The trial court further also admonished Kimbrell that if she filed an additional pleading without "substantial improvement in that pleading," it would mostly likely be dismissed with prejudice if a motion to dismiss was filed. The trial court noted a dismissal with prejudice was "a drastic measure" that the court did not take lightly. The trial court stated to Kimbrell, "I just want you to be aware, so that you act accordingly."

¶ 24                                  C. Second Amended Complaint

¶ 25    On March 20, 2017, Kimbrell, "on behalf of herself, her spouse Michael D. Kimbrell and her mother Anna F. Isaac," filed a *pro se*, verified second amended complaint for "Quiet Title" and a "Declaratory Judgment for Slander of Title," requesting that the court "declare the respective rights of parties in and to real property the subject of [the] complaint." Kimbrell described the subject property[8] and requested that the trial court determine the priority of competing liens or encumbrances, declare that an interest or lien appearing in the public records was invalid, and find that documents held by defendant were manufactured, were not signed by plaintiffs, were never "closed," and did not meet the requirements of applicable banking and

---

[8]Kimbrell alleged, "[t]his action pertains to the properties known as 1324-1330 W. Jeth Ct. Peoria, IL 61614 combined tax IDs 14-17-126-004, 14-17-126-019; frontage lots A & B, 14-17-126-015 1 ac R-7 parking lot/wooded lot 1306 W. Jeth Ct, 14-17-126-016 6522 N University St, 14-17-126-017 6600 N University and 14-17-126-012-Parcel C 6608 N University common addresses and Tax ID. Parcels A-B-C case 99-CH-393 survey Exhibit A."

mortgage laws. Kimbrell alleged that on July 27, 2009, she obtained a construction loan from State Bank of Speer for $401,625 to erect a new building "on the now combined parcel 14-17-126-004 (combined with parcel A, B, and encroached parcel 14-17-126-019 easement by necessity acquired ground)." Kimbrell attached various documents to the second amended complaint as evidence that the related notes/mortgages were "released." Kimbrell stated that, at the time of the closing on the "final mortgage," it was discovered that "a small parcel was encroached on belonging to [Kimbrell's] LLC building 14-17-126-001" and defendant State Bank of Speer "did not close the mortgage." Kimbrell alleged that plaintiffs never signed either of the notes that State Bank of Speer was claiming was evidence of liens against the subject properties and there were no corresponding mortgages or closing statements. In further support of her quiet title claim, Kimbrell additionally alleged that she was in possession of the subject properties and defendant "even sends their pleadings to the address."[9]

¶ 26    In response, defendant filed a motion to dismiss the second amended complaint, arguing plaintiffs failed to allege necessary facts to sufficiently state a claim. Defendant specifically argued that plaintiffs could not bring an action for quiet title because they were not in possession of the subject property, with defendant contending that property identification No. 14-17-126-012, "at a minimum," was included as part of the property foreclosed upon by Fannie Mae and subsequently sold to a third party. Defendant argued that the loans were not paid or released, the loans were currently in default, and collection efforts could not be pursued due to Kimbrell's pending bankruptcy case. Defendant also argued the second amended complaint was a nullity that must be dismissed because Kimbrell was engaging in the unauthorized practice of law by filing the second amended complaint "on behalf of herself, her spouse Michael D. Kimbrell and

[9]Kimbrell's address of record is listed as 6608 N. University Street in Peoria, Illinois, on her filings and in the notices defendant sent to Kimbrell.

12

her mother Anna F. Isaacs." Defendant stated that despite the numerous argued motions, the other two plaintiffs have never appeared in court or "uttered a single word into the record on their own behalf." In addition, defendant requested that the trial court rule that "the Standing Order from October 17, 2014, applie[d] to the parties in this case."

¶ 27 On July 27, 2017, at the hearing on defendant's motion, defendant requested that plaintiff's second amended complaint be dismissed with prejudice because Kimbrell was engaging in the unauthorized practice of law by acting on behalf of her mother and husband. Defendant also argued that plaintiffs did not have title to the subject property and, therefore, could not bring a claim for quiet title. Defendant explained that it held a mortgage on a small portion of the subject property, which was at issue in Kimbrell's pending bankruptcy case, and the remainder of the property had been foreclosed upon by Fannie Mae and sold to a third party. Defendant also argued that plaintiffs failed to state a claim for slander of title and that the loans were never paid.

¶ 28 In response, Kimbrell argued that her second amended complaint was filed solely on behalf of herself. She additionally argued that she filed the current suit to have State Bank of Speer "verify a mortgage that's remaining on the parcels" to include a description of the property and prove a corresponding note of debt. Kimbrell argued that State Bank of Speer never completed closing documents to be able to claim a first mortgage lien on the subject property and requested that the trial court declare that there was no mortgage lien held by State Bank of Speer related to the subject property.

¶ 29                                III. Trial Court's Ruling

¶ 30 In ruling, the trial court indicated that it was clear from the language of the complaint that Kimbrell "is representing three plaintiffs" and that Kimbrell's *pro se* second amended complaint

13

had been "put forth" also on behalf of her mother and her husband. The trial court stated, "[a]side from that issue, the remainder of the complaint is incomprehensible." The trial court stated that it could not discern what Kimbrell was requesting and did not know how defendant could intelligently respond to it, noting that it was Kimbrell's third attempt at filing a complaint. Kimbrell stated, "[t]here is no third yet, unless you let me leave to try again." After going back and forth with Kimbrell as to whether she had filed two or three complaints, the trial court stated, "it can't keep going, and I am going to dismiss with prejudice." The trial court stated, "[w]ith regard to sanctions," it would incorporate the order from case No. 14-MR-272 entered on October 17, 2014, into its order. The trial court denied the request of defendant's attorney to add himself and his law firm to the sanctions order.

¶ 31        In the written order, the trial court indicated that: (1) State Bank of Speer's motion to dismiss plaintiffs' verified second amended complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)) and for sanctions was granted; (2) the second amended complaint was "dismissed in its entirety with prejudice"; (3) the order entered in case No. 14-MR-272 on October 17, 2014, was adopted in this case as if fully set forth within, in favor of all defendants, their agents and representatives, "except to those portions pertaining to Anna Isaacs"; and (4) plaintiffs' motion for summary judgment and all other pending motions and pleadings were moot in light of the dismissal of the second amended complaint.[10]

¶ 32        Kimbrell appealed.

¶ 33                                          ANALYSIS

---

[10]After filing the second amended complaint in this case and prior to defendant filing its motion to dismiss, Kimbrell filed a motion for summary judgment on April 17, 2017. She, thereafter, filed a "motion request for admission of facts" and a "motion to deem facts admitted and for sanctions."

¶ 34    Kimbrell's notice of appeal was filed with only herself as the named plaintiff in the caption and with her proceeding *pro se* as the only appellant. Kimbrell alleged in the notice of appeal, liberally construed, that the second amended complaint had stated a claim for quiet title and requested that the trial court declare the respective rights of the parties in regard to the subject property. Kimbrell argued she could not have asserted her claim for quiet title "any plainer" and the trial court's dismissal of the second amended complaint as "incomprehensible" demonstrated the trial court's bias toward her as a *pro se* plaintiff.[11] Kimbrell requested that this court reverse the trial court's dismissal order and remand this case for the trial court to determine who had superior title to the subject property. Kimbrell's appellate brief contains arguments that are difficult to follow, with many interwoven superfluous and tangential statements, similar to the pleadings and motions filed by Kimbrell in the trial court. Liberally construing Kimbrell's *pro se* notice of appeal and *pro se* brief on appeal, it appears that Kimbrell argues that the trial court erred in dismissing her second amended complaint with prejudice because she properly alleged a quiet title action and a slander of title action.

¶ 35    On appeal, defendant argues, among other things, that the trial court was required to dismiss the second amended complaint as a nullity because Kimbrell, who is not an attorney, engaged in the unauthorized practice of law by filing the second amended complaint on behalf of her husband and mother in addition to herself. Defendant also argues, *inter alia*, that the second amended complaint was deficient on its face where it contained "virtually no substantive facts whatsoever"; Kimbrell was unable to adequately plead possession of the property to support her claim for quiet title; and Kimbrell failed to state a claim for declaratory relief by failing to indicate "what, if any, alleged ripe controversy must be determined."

---

[11] Kimbrell further argued that defendant had admitted it did not have a mortgage on the subject property by way of its failure to respond to her Illinois Supreme Court Rule 216 (eff. July 1, 2014) request to admit.

¶ 36 In addressing defendant's argument that Kimbrell's second amended complaint must be treated as a nullity due to Kimbrell engaging in the unauthorized practice of law, we note that the Illinois Supreme Court has the inherent power to define and regulate the practice of law in this state. *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 14. The Illinois Supreme Court has promulgated regulatory rules to govern the admission of lawyers to the state bar, regulate the practice of law and the conduct of lawyers, and prescribe discipline for lawyer misconduct. *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 383 (2005), *overruled in part on other grounds, LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 42. These regulatory rules are intended to safeguard the public from individuals unqualified to practice law and to ensure the integrity of our legal system. *Downtown Disposal Services*, 2012 IL 112040, ¶ 14 (citing *Sperry*, 214 Ill. 2d at 383).

¶ 37 Under the nullity rule, proceedings in a suit by a person not entitled to practice law are a nullity and " 'the suit may be dismissed' " and, if the cause proceeded to judgment, the judgment is void. *Sperry*, 214 Ill. 2d at 389 (quoting *Remole Soil Service, Inc. v. Benson*, 68 Ill. App. 2d 234, 239 (1966)). The nullity rule is grounded in the fact that there are risks to individual clients and the integrity of the legal system inherent in the representation by an unlicensed person. *Id.* at 389-90. "The purpose of the nullity 'rule is *** to protect litigants against the mistakes of the ignorant and the schemes of unscrupulous and to protect the court itself in the administration of its proceedings from those lacking the requisite skills.' " *Id.* at 390 (quoting *Janiczek v. Dover Management Co.*, 134 Ill. App. 3d 543, 546 (1985)).

¶ 38 Our supreme court has specifically held that the application of the nullity rule is not automatic and, "[i]nstead, the circuit court should consider the circumstances of the case and the facts before it when determining whether dismissal is proper." *Downtown Disposal Services*,

16

2012 IL 112040, ¶¶ 31, 36 (holding "there is no automatic nullity rule" and rejecting the contention that any act of legal representation undertaken by a nonattorney on behalf of a corporation renders the proceedings void *ab initio*). A *per se* nullity rule is unreasonable, and sanctions for violating the rule against the unauthorized practice of law should be in proportion to the gravity of the violations' consequences. *Id.* ¶ 30. Because the consequences of applying the nullity rule can be harsh, it should be invoked only where it fulfills the purposes protecting the public and the integrity of the court system from the actions of the unlicensed and where no alternative remedy is possible. *Id.* (citing *Applebaum v. Rush University Medical Center*, 231 Ill. 2d 429, 438 (2008)).

¶ 39        In *Downtown Disposal Services*, the trial court had granted the defendant's motion to dismiss administrative review complaints filed by the plaintiff-corporation's president, who was not an attorney and, therefore, had engaged in the unauthorized practice of law. *Id.* ¶¶ 17-19 (a corporation must be represented by counsel in legal proceedings). Our supreme court stated that in determining whether to apply the nullity rule, a trial court should consider, among other things, "whether the nonattorney's conduct [was] done without knowledge that the action was improper, whether the corporation acted diligently in correcting the mistake by obtaining counsel, whether the nonattorney's participation [was] minimal, and whether the participation result[ed] in prejudice to the opposing party." *Id.* ¶ 31. Our supreme court indicated that an action is properly dismissed where the nonlawyer's participation on behalf of the corporation is substantial or the corporation does not take prompt action to correct the defect. *Id.* Our supreme court noted that: the corporation's president was not aware that he could not prepare and sign the complaint for administrative review; the administrative law officer advised the corporation's president on procedures for filing the complaint, which as a layperson, he could have interpreted

17

as directing him personally to execute the filing; the participation of the corporation's president was minimal in that he filed a preprinted form with plaintiff's name, address, the date of the administrative decision, and the docket numbers; and the corporation's president made no unscrupulous attempt to litigate on behalf of the corporation. *Id.* ¶ 32. Our supreme court concluded that the trial court should have allowed an alternative remedy, rather than dismissing the complaint as nullity, by permitting the corporation to amend its complaint for administrative review to add counsel's signature. *Id.* ¶¶ 32, 34, 36 (holding the lack of an attorney's signature on a complaint does not render the complaint for administrative review null and void or mandate dismissal in all instances and, where a nonattorney signs a complaint for administrative review on behalf of a corporation, the trial court should afford the corporation an opportunity to retain counsel and amend the complaint if the facts so warrant).

¶ 40        Here, Kimbrell filed the second amended complaint at issue not only on her own behalf but also "on behalf of" her husband and her mother and, additionally, was the only person who represented the three plaintiffs at the hearings in this case. See *Marken Real Estate & Management Corp. v. Adams*, 56 Ill. App. 3d 426, 429 (1977) (the signing of a complaint by a nonattorney constitutes the unauthorized practice of law). A lay person may only appear on his or her own behalf and may not represent another in a court of law. *Blue v. People*, 223 Ill. App. 3d 594, 596 (1992); see also 705 ILCS 205/1 (West 2016) ("[n]o person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State"). Thus, Kimbrell, who is not an attorney, engaged in the unauthorized practice of law.

¶ 41        We note and distinguish, however, in reference to Kimbrell's filing on behalf of her husband, the case of *Custom Builders, Inc. v. Clemons*, 52 Ill. App. 3d 399 (1977), wherein this

18

court held that it was not error for the trial court to allow the attorney representing the husband and wife to withdraw and allow the wife to proceed *pro se* and represent her codefendant husband, who did not appear and took no part in the proceedings. The *Clemons* case is distinguishable from this case, where the *pro se* wife in that case was *defending* the suit filed against herself and her husband. See 750 ILCS 65/2 (West 2016)[12] ("If husband and wife are sued together, either may defend for his or her own right and, if either neglects to defend, the other may defend for both."). Here, Kimbrell filed the action and signed the complaint on behalf of herself and her husband and mother, and she was not defending a suit.

¶ 42        Arguably, prior to our supreme court's decision in *Downtown Disposal Services*, the effect of a nonattorney's unauthorized practice of law on behalf of a party was to "*require*" dismissal of the cause or to treat the particular actions taken by the representative as a nullity. (Emphasis in original.) *Downtown Disposal Services*, 2012 IL 112040, ¶¶ 47, 49 (Karmeier, J., dissenting, joined by Kilbride, C.J., and Thomas, J.) (quoting *Sperry*, 214 Ill. 2d at 390 and noting that courts of Illinois had only previously declined to apply the nullity rule in situations "where an actual lawyer was involved or appeared to be involved in the case at the time the proceeding was initiated"). However, pursuant to our supreme court's decision in *Downtown Disposal Services*, the trial court was required to consider the circumstances of the case and the facts before it in determining whether to dismiss the second amended complaint as a nullity due to Kimbrell's unauthorized practice of law. *Id.* ¶¶ 31, 36 (majority opinion). Given that the trial court was required to weigh several factors in determining whether the second amended complaint should be dismissed as a nullity, we review the trial court's decision in that regard for an abuse of discretion. See *id.* ¶ 31.

---

[12]Our supreme court has not ruled on the efficacy of this statute as it relates to spousal representation.

¶ 43    Here, in determining whether a dismissal on nullity grounds is proper, we note that Kimbrell filing the pleadings on behalf of her mother and husband was done with knowledge that the action was improper. Under the order entered in case No. 14-MR-272 entered on October 17, 2014, Kimbrell had been specifically "enjoined and prohibited from drafting any pleading, motion, complaint or written document of any type in the name of any third party or for the use or benefit of any third party, specifically including, but not limited to, Anna Isaacs and Michael Kimbrell." None of the plaintiffs obtained counsel. Kimbrell's participation on behalf of her husband and her mother in this case was far from "minimal." Rather, her participation was substantial where she filed the original complaint, filed two subsequent amended complaints, filed various motions, including a motion for summary judgment, and made arguments before the trial court in support of her pleadings and motions and in response to defendant's motions to dismiss. Despite Kimbrell indicating that her second amended complaint was filed solely on behalf of herself, Kimbrell's mother and husband were named plaintiffs and the trial court found that it was "clear" from the language of the pleading that Kimbrell was representing all three plaintiffs.

¶ 44    Furthermore, there is no clear alternative to applying the nullity rule in this case. Section 2-616 of the Code of Civil Procedure provides, in part,

> "(a) At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings,

which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim.

    \*\*\*

(c) A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just." 735 ILCS 5/2-616 (West 2016).

In determining whether the trial court has abused its discretion in deciding not to allow a party leave to amend a pleading, we consider the following factors: (1) whether the proposed amendment would cure the defective pleading, (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether there had been previous opportunities to amend. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 45      Here, in deciding to dismiss the second amended complaint as a nullity, the trial court noted that Kimbrell had three opportunities to file a coherent complaint and the second amended complaint at issue was "incomprehensible." Kimbrell requested "leave to try again." The trial court stated, "it can't keep going." Our review of the second amended complaint shows that it was chaotic in nature and contained allegations and arguments that were difficult to discern, even when liberally construed. Kimbrell had three opportunities to file a sufficient complaint, and there was no indication that allowing an additional amendment would result in a cure to the defective pleading. Thus, as to Kimbrell, the facts and circumstances of this case do not indicate the trial court abused its discretion in refraining from allowing her another opportunity to amend the complaint to either add counsel's signature or to proceed *pro se* solely on her own behalf. Additionally, allowing an amendment of the pleading in regard to Kimbrell's mother and

husband was not appropriate because neither of them have formally appeared in this matter. We, therefore, conclude that the trial court did not abuse its discretion in finding there was not an alternative remedy to a dismissal of the second amended complaint.

¶ 46        Consequently, given that the facts and circumstances of this case do not support an alternative remedy to a dismissal, Kimbrell's representation on behalf of her mother and husband rendered the proceedings null and void where Kimbrell is not a licensed attorney capable of bringing claims on behalf of her mother and husband. Although the trial court's written order indicates this matter was dismissed pursuant to section 2-619 of the Code, our review of the trial court's oral rulings indicates this matter was, in fact, dismissed as a nullity where the trial court found that Kimbrell was engaging in the unauthorized practice of law in that it was "clear" she was representing all three plaintiffs. Therefore, we affirm the trial court's dismissal of the second amended complaint as a nullity.

¶ 47        As a final matter, we note the attorney for defendant had requested that the trial court rule that the previous sanctions order entered pursuant to Rule 137 against Kimbrell in case No. 12-MR-272 be made applicable to defendant in this case. The trial court incorporated that order into the order entered in this case. Rule 137 provides,

> "Every pleading, motion and other document of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other document and state his address. *** If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a

22

represented party, or both, an appropriate sanction." Ill. S. Ct. R. 137 (eff. July 1, 2013).

¶ 48 On appeal, Kimbrell makes no argument as to whether the Rule 137 sanctions order entered in this case was an abuse of the trial court's discretion. See *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007) (a reviewing court will not disturb a trial court's decision regarding Rule 137 sanctions absent an abuse of discretion). We, therefore, do not address the propriety of the Rule 137 sanctions order entered by the trial court in this case.

¶ 49                                                    CONCLUSION

¶ 50 The judgment of the circuit court of Peoria County is affirmed.

¶ 51 Affirmed.